## TIFFANY v. SHIPLEY.—161 S. W. (2d) 373.

Eastern Section.   December 6, 1941.

Petition for Certiorari denied by Supreme Court, April 4, 1942.

540

T. E. Mitchell, of Johnson City, and Hale & Minter, of Kingsport, for plaintiff in error:

Cox, Taylor, Epps & Miller, of Johnson City, and E. Ray Hauk, of Kingsport, for defendant in error.

PORTRUM, J.  On the night of December 7, 1940, at ten o'clock, the plaintiff, W. M. Shipley, boarded a bus in Johnson City,

traveling between Johnson City and Kingsport, for the purpose of going to his home in the country, and he disembarked at a cross road leading to his home at about 10:15 p. m. He got off of the bus at the cross road on the right-hand side of the highway facing Kingsport, which necessitated crossing the highway to follow the cross road to his home about one-half mile away. It had been raining, the sky was overcast, and patches of fog had settled in the low places upon the highway, and the highway was hard surfaced and slick. The plaintiff states before he attempted to cross the highway he looked to his left and saw an automobile approaching, by its lights, a good distance away. This automobile was going toward Kingsport and was upon the right-hand side looking toward Kingsport. He then looked to his right for cars approaching from Kingsport, which would be upon the left side of the highway, and he saw no car approaching. He started across the intersection at an angle of about 15 degrees as stated by the defendant, and had reached the center of the highway when the defendant, driving a station car, saw him 75 feet away and he attempted to miss the plaintiff by driving to his left and behind the plaintiff, having first applied the brakes lightly because of the slick condition of the road, and to prevent the car skidding, but he was unable to accomplish this, running by the plaintiff with the front part of his car, but striking him with the rear part, tearing off the fender, breaking the rear window of the car and bending the rear bumper by the contact. At the place of the accident the highway for a long distance was straight, and the defendant was familiar with the highway and knew or should have known of the cross road. He knew that the roadway was slick and that the view of the cross road was obstructed by a patch of fog. Immediately before coming to the cross road he had passed a passenger bus which, by the exercise of due care, he should have seen, and anticipated the possibility that it had discharged a passenger at this cross road. But the defendant failed to give attention to the passing bus or to anticipate the presence of persons upon the highway at the intersection, and entered this patch of fog upon a wet road at a rate of speed which rendered it impossible for him to control his car by stopping it within the range of his vision. As a consequence he was running blindly across this intersection with his car out of control, without regard to the rights of others using the intersection. Finding himself in this predicament, the defendant did all he could after seeing the plaintiff to avoid the accident, but he was unable to do so, which demonstrates that he was negligently operating his automobile at the time and place of the accident. The question of his negligent operation of the car was one for the jury and it was warranted by the evidence in concluding that the defendant was negligent.

It is next insisted that the plaintiff was guilty of proximate contributory negligence, barring his right to recover. Under the

facts and circumstances of this case we think this question is likewise a question for the jury. The plaintiff says he looked to his right in the direction from which the car was approaching and did not see the car. His vision could have been obstructed by either the moving bus or by the fog, and the defendant states that he could not see the plaintiff until within 75 feet of him because of the fog, so it follows that the plaintiff could not see the defendant by reason of the fog. The plaintiff was not required to stand upon the road side until the fog lifted, but with the exercise of due care he could attempt to cross the road in the fog, relying upon automobile drivers to operate their cars with such care as was commensurate with the condition, that is to say, with due care on the part of the automobile operator, and had the operator done so, the accident could have been avoided. The plaintiff was not responsible for the wet pavement and it afforded the defendant no excuse for his inability to apply his brakes with force without danger to himself and the occupants of his car. The wet pavement was an admonition of danger, especially upon an approach to an intersection which pedestrians and traffic may be expected to be using the intersection. National Cash Register Co. v. Leach, 3 Tenn. App., 411; Hunter v. Stacey, 24 Tenn. App., 158, 141 S. W. (2d), 921.

The trial judge correctly overruled the motion for a directed verdict.

And the trial judge was not in error in declining to give special request No. 1, which requested the judge to charge that ''the automobile and defendant had the right-of-way over the plaintiff at such point,'' for the reason that the rights of the parties at this intersection were mutual, each being charged with due care. Leach v. Asman, 130 Tenn., 510, 172 S. W., 303; Elmore v. Thompson, 14 Tenn. App., 78.

Special request No. 3 was not apropos. The statute relied upon, Code 1938, sec. 2687(d), has reference to the use of sidewalks, or in the absence of a sidewalk the use of the left-hand side of the highway by pedestrians using the highway as a walkway. This statute is not applicable to a pedestrian crossing a highway at an intersection, and the fact that the plaintiff was angling across the intersection at a 15 degree angle did not constitute him a pedestrian using the highway as a walkway.

Special request No. 4 is not an accurate statement of the law, for among other things the judge was asked to charge, ''And if he voluntarily attempts to pass in front of an approaching car when it is dangerously close, he assumes the risk of such attempted crossing.'' Had the word ''knowingly'' in the place of ''voluntarily'' been used, the statement would have contained an applicable principle of law, but the charge as given casts the burden upon both parties of using due care for his safety, and the jury knew that a person who knowingly exposed himself to danger was guilty of contribu-

tory negligence, and also that a person is required to use his faculties of hearing and seeing in order to exercise due care at a place of danger.

■■■ Special request No. 5 is not a complete and full statement of the law, for it says "One who accepts an emergency and acts according to his best judgment, or who, because of want of time in which to form judgment, omits to act in the most judicial manner, is not chargeable with negligence." There is no complaint here of the defendant's act in emergency, it is his negligently placing himself in the emergency, for which he is held responsible. This request omits the vital ingredients and if given as requested would have amounted to a direction of the verdict for the defendant.

■■■ It is assigned as error that the trial judge erred in charging the jury as follows:

"It is also the duty of the driver of a motor vehicle to drive such vehicle at a rate of speed so as to be able to stop within the distance discernable by a person having proper vision, or within the distance discernable from the headlights of his car or motor driven vehicle, and a failure to do so is negligence."

This is a correct statement of the law unless exceptional circumstances and conditions render it inapplicable. And it is for the jury to determine if the circumstances and conditions render it inapplicable; therefore it was not error to give the charge, while it might have been amplified by the rule applicable in reference to exceptional conditions, but in the absence of a special request for an amplification the trial judge will not be put in error for charging a correct principle of law. Had there been a request for an amplification, or an exposition of the rule in reference to exceptional conditions, making the general rule inapplicable, we are not called upon to say if it would be error to refuse it. It is doubtful if the operation of an automobile through fog at an intersection could be classified as exceptional, or the conduct of "the practice and experience of persons of ordinary caution and prudence." Main St. Transfer & Storage Co. v. Smith, 166 Tenn., 482, 63 S. W. (2d), 665, 668. Tennessee Law Review, Vol. 15, p. 718.

The 14th and 15th assignments of error read as follows:

"(14) Because soon after the defendant began his testimony, the trial judge left the bench, walked over to a point inside the bar, talked to Mr. Leon Easterly, an attorney of Greeneville, asked for a bill of exceptions, which Mr. Easterly had, took it back with him to the bench where he read part of it, then called Mr. Easterly to him and talked with him some words and signed the bill of exceptions and exhibits thereto, all of which took approximately ten minutes of his time. This action on the part of the trial judge tended to belittle the testimony of the defendant, distracted the attention of the jury and deprived the defendant of having his testimony heard by the trial judge, sitting as the thirteenth juror.

"(15) Because during the final argument made in the case by defendant's counsel, the trial judge left the bench, went into an anteroom with the door closed, where he remained several minutes, during which time the argument continued, and then returned to the bench without ever adjourning or suspending court. This had a tendency to minimize or detract from anything which might be said by the defendant's counsel in his argument of the case and deprived the defendant of his constitutional right to be heard by counsel and on this motion, he prays the judgment of the court."

It is well settled that this court cannot reverse for error unless it affirmatively appears from the record that the error was prejudicial and affected the result of the trial. Charles Thomason v. Calvin Trentham, Adm'r, 178 Tenn., —, 154 S. W. (2d) 792, 138 A. L. R., 461.

No juror was interrogated, or if interrogated was introduced upon the hearing for a motion for a new trial to detemine if the judge's conduct affected the jury's consideration of the facts or argument. In the absence of this affirmative showing, this court cannot presume that the interest of the defendant was adversely affected. The trial judge acts as a thirteenth juror and must weigh the evidence to determine if it preponderates in favor of the successful party, and to perform this function it is necessary he be familiar with the evidence, but he performs this judicial act and rules upon the motion for a new trial at a later time, and the trial judge sometimes reviews the bill of exceptions, when available, before acting upon the motion. In this case the bill of exceptions was filed several days before the trial judge acted upon the motion for a new trial, and it does not affirmatively appear that the trial judge did not familiarize himself with the defendant's testimony before passing upon the weight of the evidence. If he had forgotten it or if he did not hear it, the presumption is that he did, for a judicial officer is presumed to do his duty. Certainly the Appellate Court will not presume that the trial judge failed to do his duty in the absence of a showing to the contrary. The rule in other jurisdiction is that there must be a showing of injury to the complaining parties. Trials, 64 C. J., par. 63, p. 67; 26 R. C. L., sec. 7, p. 1014. In the instant case, the complaining defendant was conducting the examination at the time the judge was charged with inattention, and his attorney was making the closing argument when the judge absented himself in an adjoining room, where perhaps he could have heard the argument, and no improper question was asked nor improper argument made during the absence or inattention of the judge. We cannot think the jury was impressed either favorably or unfavorably because the judge went to the rest room for a period of three minutes. If counsel thought so, at the time, it was within his power to have suspended his argument during the interval. But if the jury was impressed, it was

within the power of counsel to have established it and to have shown affirmative error by calling one or more members to testify upon the hearing of the motion for a new trial. This was not done and there is no showing of affirmative prejudicial error.

The plaintiff suffered serious injuries and has recovered a verdict of $5,000, and there is no complaint here as to the amount of the verdict. We find no prejudicial error in the record, and it is affirmed with costs.